UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISON

OCTAVIA RICE,
    Plaintiff,

vs.

FITNESS INTERNATIONAL, LLC d/b/a
LA FITNESS,
    Defendant.
_____/

CASE NO.: 3:18-cv-7-J-34MCR

DIVISION:

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, OCTAVIA RICE, (hereafter Plaintiff) by and through undersigned counsel, and files this Complaint against the Defendant, FITNESS INTERNATIONAL, LLC d/b/a LA Fitness (hereinafter Defendant), and in support thereof respectfully alleges the following:

1. Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## INTRODUCTION

2. The TCPA was enacted to prevent companies like FITNESS INTERNATIONAL, LLC, from invading American citizens' privacy and prevent abusive "robo-calls."

3. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *See Mims v. Arrow Fin. Servs., LLC.*, 132 S.Ct. 740, 745 (2012).

4. "Senator Hollings, the TCPA's sponsor, describes these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at

1

night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *See Mims* at 752 (*quoting* 137 Cong. Rec. 30, 821 (1991)). Senator Hollings "presumabl[y] intended to give telephone subscribers another option; telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. Ct. App. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet on Consumer Protection Proposal*, FEDERAL COMMUNICATIONS COMMISSION (2016), https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal (last visited Apr 26, 2017).

## JURISDICTION AND VENUE

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012); *and Osorio v. State Farm Bank, F.S.B.*, 746 F.3d

1242, 1249 (11th Cir. Ct. App. 2014).

9. Venue is proper in this District because the Plaintiff resides in this District (Duval County, Florida), the phone calls were received in this District and the Defendant transacts business in Duval County, Florida.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person who resides in Duval County, Florida and is a "consumer" as that term is defined by Florida Statute Section 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is a "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

13. Defendant is a creditor operating from Irvine, CA and is a "creditor" as that term is defined by Section 559.55(5).

14. At all material times herein, Defendant attempted to collect a debt, specifically an improper debt relating to a gym membership (the "Debt").

15. At all material times herein, the Debt is a consumer debt obligation resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

16. At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72. *See* Florida Statutes, Sections 559.55(5),(7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

17. At all material times herein, Defendant's conduct, with respect to the debt complained of, qualifies as "communication" as defined by Florida Statutes, Section 559.44(2).

18. At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third party vendors and insurers.

19. Defendant, **FITNESS INTERNATIONAL, LLC,** is a limited liability company which was formed in California with its principal place of business at 3161 Michelson Drive, Suite 600, Irvine, CA 92612 and conducting business in the State of Florida.

20. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, in Duval County, Florida, by the Defendant's placing of illegal calls to Duval County, Florida.

21. Defendant, at all material times, was attempting to collect on a gym membership debt entered into by Plaintiff (hereinafter the "subject account" or "the Debt"), which was originally issued and serviced by Defendant.

22. All necessary conditions precedent to the filing of this action occurred or have been waived by the Defendant.

### FCC RULINGS AND OTHER LEGAL DECISIONS IMPACTING CLAIMS BROUGHT UNDER THE TELEPHONE CONSUMER PROTECTION ACT

23. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls as those alleged herein are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone

Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

24. Under the TCPA, and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

25. The FCC has opined that the ability to dial numbers without any human intervention in the calling process is the hallmark of an automatic telephone dialing system (i.e., auto-dialer). In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 2008, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶¶ 11-13; In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 WL 21517583, 18 F. C.C.R. 14014, ¶ 132 (Fed. Commc'n Cmm'n July 3, 2003).

26. With respect to whether a device is considered an "automatic telephone dialing system" for purposes of the TCPA, at least one Federal Court has specifically noted that "a system need not actually store, produce, or call randomly or sequentially generated numbers; it need only have the capacity to do it." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) (emphasis added).

27. Furthermore, the FCC has specifically ruled that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" within the TCPA. 2003 TCPA Order, 18 FCC Rcd 14092-3 at ¶ 133.

28. Both the FCC and federal courts have held that as a matter of law a predictive dialer is a type of automatic telephone dialing system. See generally, Griffith v. Consumer Portfolio Serv., Inc., No. 10-c-2697 (N.D. Il. Aug. 16, 2011).

29. The Hobbs Act does not vest federal district courts with subject matter jurisdiction to disregard FCC rulings. Leckler v. Cashcall, Inc., 2008 U.S. Dist. LEXIS 97439, *7-8 (N.D. Cal. 2008).

30. The TCPA has a four-year statute of limitations pursuant to 28 U.S.C. § 1658. Stern v. Bluestone, 2008 N.Y. App. Div. LEXIS (N.Y. App. Div. 1st Dep't., 2008).

31. Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. See *Osorio v. State Farm Bank, FSB*, No. 13-10951 (11th Cir. Mar. 28, 2014).

## **CLAIMS FOR RELIEF**

### COUNT 1
### VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT Section 559.55 et seq., Fla. Stat.

32. Plaintiff includes paragraphs 1-31 as if fully stated herein.

33. Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by and Section 559.55(1), Fla. Stat., namely, a debt for a gym membership with the Defendant.

34. Prior to November 2016, Plaintiff entered into a gym membership with Defendant, which included the payment of membership fees.

35. On November 15, 2016, Plaintiff filed a petition for relief under Title 11 Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the

Middle District of Florida, Jacksonville Division in Case 3:16-bk-04198-PMG.

36. Notice to Creditors of the bankruptcy was sent on November 18, 2016. ***See Exhibit A.*** Defendant, as *LA Fitness*, is clearly included on this Notice. Plaintiff intended for her membership with Defendant to be included, and subsequently discharged, in the bankruptcy.

37. Beginning November 21, 2016, Defendant began emailing and attempting to contact Plaintiff Rice to collect membership fees during the pendency of her bankruptcy. ***See Emails, attached as Exhibit B.***

38. From November 2016 through January 2017, Plaintiff received multiple phone calls to her cell phone and others, and emails from Defendant demanding payment. Plaintiff explained to Defendant's agents that she had filed for bankruptcy multiple times.

39. Under *11 U.S. Code § 362*, a bankruptcy petition filed by a debtor "operates as a stay, applicable to all entities, of . . . any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title [and] . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

40. As part of the bankruptcy case, as well, Plaintiff gained bankruptcy counsel – Carol Galloway, Esq. Ms. Galloway's name, address, and other contact information, were on documents sent to Defendant, and therefore, Defendant had notice of Plaintiff's representation.

41. Despite being on repeated notice that Defendant should not contact the Plaintiff to collect the debt *and* that the Plaintiff was represented by bankruptcy counsel, Defendant continued to attempt to collect during the pendency of Plaintiff's bankruptcy case.

42. By refusing to stop collecting from the Plaintiff during bankruptcy and with notice that Plaintiff was represented by counsel, the Defendant is, was subject to, and has violated provisions of Fla. Stat. §559.72:

    a. "Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." Fla. Stat. §559.72(18);

    b. "…willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. §559.72(7); and

    c. "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.." Fla. Stat. §559.72(9).

43. Defendant's illegal and abusive collection communications as more fully described above were the direct and proximate cause of emotional distress on the part of Plaintiff and caused her unnecessary personal strain in her relationships, as well as with other family members.

44. Plaintiff has suffered actual damages as a result of these illegal collection communications by the Defendant in the form of anger, anxiety, emotional distress,

fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

45. As a result of Defendant's violations of the FCCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs pursuant to Section 559.77 from Defendant.

46. Additionally, Section 559.77 provides a court may award punitive damages as well as equitable relief to Plaintiff such as enjoining further illegal collection activity.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant:

- for an award of actual damages pursuant to Section 559.77 against Defendant and for Plaintiff;
- for an award of statutory damages of $1,000.00 pursuant to Section 559.77 against Defendant and for Plaintiff;
- for an award of costs of litigation and reasonable attorney's fees pursuant to Section 559.77 against Defendant and for Plaintiff; and
- for such other relief as this Court deems just and proper.

### **COUNT II**
### **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

47. Plaintiff includes paragraphs 1-46 as if fully stated herein.

48. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act by making telephone calls to Plaintiff's cellular telephone, using an automatic telephone dialing system or an artificial or prerecorded voice, and not legally permitted under any provision of the aforementioned statute.

49. From November 2016 through January 2017, Plaintiff received multiple phone calls to her cell phone and others, and emails from Defendant demanding payment.

9

Plaintiff explained to Defendant's agents that she had filed for bankruptcy multiple times.

50. Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calls to her cell phone number.

51. Defendant contacted Plaintiff's cell phone despite *clear* requests from Plaintiff to stop calling, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the Debt.

52. Upon information and belief, and with the understanding that most of the numbers called did not even belong to the debtor on the subject account, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C.§ 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that there was a pause before a live person came on the line.

53. Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone number was done after she had revoked consent *multiple times* and without the "prior expressed consent" of the Plaintiff.

54. Beginning in November 2016, Plaintiff individually told a representative from Defendant that she revoked consent or otherwise wanted the calls to stop.

55. Despite Plaintiff instructing the Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone continued for months.

56. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond, when Plaintiff first advised Defendant to stop calling her.

57. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individuals, like Plaintiff, advising Defendant to stop calling.

58. Defendant's corporate policy provided no means for the Plaintiff to have her cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

59. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

60. Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular phone.

61. Due to Defendant's constant autodialer calls and demands for payment, Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

- Statutory damages for each violation of the TCPA;
- Statutory damages for each knowing or willful violation of the TCPA;
- A permanent injunction prohibiting Defendant from placing non-emergency calls to Plaintiff's cellular telephone by use of an automatic telephone dialing system;
- Attorney's fees, litigation expenses and costs of the instant suit; and

- Such other or further relief as the Court deems proper.

## TRIAL BY JURY

Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## SPOILATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence – paper, audio recordings, electronic documents, or data – pertaining to this litigation as required by law.

Respectfully submitted this 2nd day of January 2018.

**MAX STORY, P.A.**

/s/ Max Story
MAX STORY, ESQ.
Florida Bar No.: 527238
Austin J. Griffin, Esq.
Florida Bar. No.: 117740
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL  32250
Telephone: (904) 372-4109
max@storylawgroup.com
austin@storylawgroup.com
Attorneys for Plaintiff